UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Bruce Kelley,

    Plaintiff,

v.                                              Civil No. 04-4071 (JNE/FLN)
                                              ORDER

[NSP/Xcel] Pension Plan,
Northern States Power Company n/k/a
Xcel Energy, Inc., and IBEW Local No. 23,

    Defendants.

---

Joel Anderson, Esq., Joel M. Anderson & Associates, appeared for Plaintiff Bruce Kelley.

Timothy R. Thornton, Esq., and Timothy G. Gelinski, Esq., Briggs and Morgan, P.A., appeared for Defendants [NSP/Xcel] Pension Plan and Northern States Power Company n/k/a Xcel Energy, Inc.

Richard Kaspari, Esq., Metcalf, Kaspari, Howard, Engdahl & Lazarus, P.A., appeared for Defendant IBEW Local No. 23.

---

Bruce Kelley brought this action against his former employer, Northern States Power Company n/k/a Xcel Energy, Inc. (Xcel), and the [NSP/Xcel] Pension Plan (collectively, Non-Union Defendants), alleging that the Non-Union Defendants failed to pay him amounts due under a disability/retirement plan and to provide him with plan documents in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2000). In addition, he brought claims against his former union, IBEW Local No. 23 (Union), alleging that the Union breached its duty of fair representation in connection with his disability benefits grievance against the Non-Union Defendants and that the Union's breach and termination of his membership were done on account of his disability in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101-12213 (2000), and the Minnesota Human Rights

1

Act (MHRA), Minn. Stat. §§ 363A.01-.41 (2004).  The case is before the Court on the Union's motion for summary judgment, the Non-Union Defendants' motion for summary judgment, and Kelley's motion for partial summary judgment.  For the reasons set forth below, the Court grants the Union's and Non-Union Defendants' motions for summary judgment and denies Kelley's motion.

## I.     BACKGROUND

Kelley was employed by Xcel from March 1976 until he took disability retirement on February 29, 2004.  At the time of his retirement, he was a 46-year-old machinist.  As a machinist, he was represented by the Union, which negotiated a pension plan with Xcel on his behalf.  The plan in effect at the time Kelley retired, the "NSP Pension Plan for Bargaining Employees (2000 Restatement)" (Plan), contained a provision for disability benefits.  The Plan provides in relevant part:

**4.7.2   Amount Payable**

(a)     A Participant who is entitled to a Disability Pension will receive a monthly benefit equal to . . . :

(i)     1.667% of the Participant's "Projected Pay," multiplied by the Participant's years of "Projected Credited Service" up to a maximum of 30 years, minus one-half of the Participant's Primary Insurance Amount as determined in accordance with Section 4.3.3(b); provided, however, that the reduction based on the Participant's Primary Insurance Amount shall not begin until the Participant first receives a Social Security disability benefit or attains normal retirement age, whichever happens first;

. . . .

(b)     A Participant's "Projected Pay" is the Participant's Highest Average Pay determined by projecting the Participant's Recognized Compensation at the rate in effect immediately prior to the date on which the Participant became Disabled to the Participant's Normal Retirement Date.  However, if the Participant was not employed on a full time basis during the 12-month period ending on the date of Disability, the Participant's

        Recognized Compensation will be projected using the hourly (or hourly equivalent) rate of pay in effect immediately prior to the date the Participant became Disabled and the Participant's average monthly hours during the 24-month period ending on the last day of the month prior to the month in which the Participant became Disabled (or during the Participant's actual period of employment, if less).

(c)    A Participant's "Projected Credited Service" is the years of Credited Service the Participant would have had if the Participant had continued to participate in the Plan until the Participant's Normal Retirement Age. If the Participant was not employed on a full-time basis, the Participant's Credited Service will be projected using the Participant's average Hours of Service for the 24-month period ending on the last day of the month prior to the month in which the Participant became Disabled (or for the Participant's actual period of employment, if less).

The Plan defines "Highest Average Pay" as "a Participant's average Recognized Compensation for the 48 consecutive month period of Credited Service that yields the highest monthly average."

In 1985, the Union and Xcel reached an agreement to submit all disputes regarding interpretation or application of the Plan to a dispute resolution process. The agreement is embodied in the "Procedural Agreement for Pension Plan and Group Term Life Insurance Program (Effective January 1, 1985)" (Procedural Agreement).[1] Under the terms of the Procedural Agreement, union members who disagree with benefit calculations are required to file a grievance. If the grievance is denied, the Union's Joint Committee Chair may demand arbitration. If, however, the Union Joint Committee Chair does not file an arbitration demand within five days of denial of the grievance, the grievance is deemed not to exist.

On April 16, 2003, Kelley suffered a stroke while taking a shower at home. Unable to return to work, he consulted with the Union regarding retirement options. Union Business Manager Joseph Plumbo informed Kelley that benefits for a non-work related disability

---

[1]     The Procedural Agreement was extended by agreement of NSP and the Union in March 1999, to December 31, 2004. It exclusively governs all disputes relating to the Plan.

retirement would be about fifty percent of his current earnings. After receiving this information, on January 12, 2004, Kelley asked the Union to request a medical disability retirement on his behalf. The Union promptly did so, and on February 16, 2004, Xcel calculated Kelley's pension benefits as Plumbo predicted it would. On March 4, 2004, Kelley met with Xcel and Plumbo to discuss Kelley's available benefits. At that meeting, Kelley disputed Xcel's calculations. He insisted that the "Projected Pay" calculations should include pay increases he could expect until retirement. He therefore claimed that, under the terms of the Plan, he was entitled to two to three times the amount he was making at the time he became disabled.

Kelley invoked the Procedural Agreement and filed a grievance on March 24, 2004. Pursuant to the Procedural Agreement, the parties met on April 21, 2004, to resolve Kelley's grievance. Kelley was presented with the relevant portions of the Plan and an explanation of the benefit calculations. At that meeting, Xcel maintained that the definition of "Projected Pay" expressly calls for projecting the employee's recognized compensation at the rate in effect immediately prior to the date on which he became disabled, not some higher rate. The parties were unable to reach agreement, and on May 6, 2004, Xcel denied Kelley's grievance.

On May 12, 2004, Plumbo forwarded to Kelley the grievance denial and wrote:

> Enclosed please find a response to your grievance. I have indicated to you, after careful re-examination of the relevant documentation, that you have been afforded the negotiated disability benefit consistent with other bargaining unit members.
>
> Thus, I can find no reason to pursue this grievance any further. If you have any questions or comments, please call the hall.

On September 10, 2004, Kelley filed this action alleging that the Non-Union Defendants improperly calculated his benefits, improperly withheld his "vested Retirement Spending Account," and failed to provide plan documents. Kelley amended his Complaint on January 13,

4

2005, to add the Union as a defendant. In the Amended Complaint, Kelley reiterated the claims against the Non-Union Defendants and further alleged that the Union breached its duty of fair representation in its handling of his grievance and that the Union discriminated against him on the basis of his disability by failing to fairly represent him in his grievance and by terminating his membership upon his retirement. Defendants now move for summary judgment, and Kelley moves for partial summary judgment.

## II.   DISCUSSION

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party satisfies its burden, Rule 56(e) requires the party opposing the motion to respond by submitting evidentiary materials that designate "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**A.    Claims against the Union**

Kelley alleges that the Union breached the duty of fair representation it owed him in its handling of his benefits calculation grievance. "A union breaches its duty to fairly represent one of its members when its conduct is arbitrary, discriminatory, or in bad faith." *Martin v. Am.*

5

*Airlines, Inc.*, 390 F.3d 601, 606 (8th Cir. 2004). An employee asserting that a union's decision not to pursue arbitration amounts to a breach must prove more than that his underlying grievance was meritorious. *Id.* In addition, the employee must demonstrate that the union made an arbitrary decision as to the merits of his grievance. *Id.* A decision is, in some circumstances, arbitrary if the union ignores the employee's complaint or processes the employee's grievance in a perfunctory manner by, for example, acting without concern or solicitude or giving a member's grievance only cursory attention. *Id.* at 606-07. Alternatively, "[a]rbitrary conduct is behavior that is so far outside a wide range of reasonableness as to be irrational." *Id.* at 606 (quotations omitted).

In this case, the record reveals that the Union diligently represented Kelley. It provided Kelley retirement benefit information when he requested it; helped him analyze his disability benefits; informed him prior to the time he made his election that he would receive approximately fifty percent of his current wages if he retired; secured approval of his disability retirement; met with Kelley and his wife to discuss available benefits; filed a grievance on Kelley's behalf; attended the grievance hearing; and reviewed all relevant plan documents to ensure that the Non-Union Defendants' decision to deny the grievance was well-founded. As to the decision not to further pursue Kelley's grievance, Plumbo, the local Union's business manager who handled Kelley's grievance, had more than twenty years of experience negotiating pension benefits with Xcel and assisting employees represented by the Union in obtaining disability retirement and benefits. He declined to pursue Kelley's grievance because he understood, based on his experience, that Kelley's position was inconsistent with the intent of the parties regarding the manner in which disability benefits would be calculated, the language of the Plan documents, and the parties' long-standing practice in calculating disability retirement

benefits for members of the bargaining unit. Viewed in the light most favorable to Kelley, no reasonable factfinder could conclude that the Union's handling of Kelley's grievance or its decision not to pursue arbitration was arbitrary, discriminatory, or in bad faith. Thus, Kelley's claim for breach of the duty of fair representation is dismissed.[2]

Kelley further alleges that the Union discriminated against him on the basis of his disability by declining to pursue arbitration of his benefits calculation grievance and by terminating his membership in the Union, in violation of the ADA and the MHRA. The Court analyzes Kelley's ADA and MHRA claims under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Wilking v. County of Ramsey*, 153 F.3d 869, 872 (8th Cir. 1998). Under *McDonnell Douglas,* the plaintiff has the burden of establishing a prima facie case of discrimination. 411 U.S. at 802. Once the plaintiff establishes his prima facie case, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions. *Id.* If the defendant meets this burden, the plaintiff then bears the burden of demonstrating that the defendant's stated reason is a pretext for discrimination. *Id.* at 804. At all times, the plaintiff bears the ultimate burden of demonstrating

---

[2] Kelley argues that the Union breached its duty of fair representation by failing to inform him of the denial of his grievance until after the time for demanding arbitration expired. Kelley does not, however, point to any authority supporting his claim that the Union had such a duty. In fact, whether he received notice of the denial before or after the time for demanding arbitration expired, it was the Union's—not Kelley's—decision whether to pursue arbitration. Thus, the timing of the notice did not prejudice Kelley.

At the motion hearing, Kelley also argued for the first time that the Union breached its duty of fair representation by failing to provide a proper explanation of the reasons for the denial of his claim and by failing to provide him with notice of appeal rights under ERISA. Kelley's argument is misplaced for several reasons. First, Defendants explained the basis for their denial at the grievance meeting. Moreover, the Union provided Kelley with copies of the Plan provisions on which the denial was based. While it may be true that the Union did not provide him with notice of appeal rights under ERISA, this is because the typical ERISA appeal rights are supplanted by the collectively bargained Procedural Agreement procedures. *See* 29 C.F.R. § 2560.503-1.

that discrimination was the real reason for the defendant's actions. *See Wilking*, 153 F.3d at 873.

Kelley has not responded to the Union's motion for summary judgment on these claims and, on the record before the Court, the claims have no merit. Even assuming Kelley could establish a prima facie case of disability discrimination, which he has not done, Kelley has offered no evidence supporting an inference that discriminatory animus motivated the Union's decision to decline to pursue his grievance or to terminate his membership in the Union. First, with respect to pursuit of Kelley's benefits calculation grievance, the Court notes that the Union did present Kelley's grievance, as he requested. Although the Union declined to pursue arbitration when that grievance was denied, the record is undisputed that the Union made that decision because it did not believe the grievance had merit. Kelley has not offered any evidence supporting an inference that his disability played a role in that decision. Second, with respect to Kelley's termination from Union membership, the Union has offered undisputed evidence that its International Constitution requires a local union's members to be employed within that local union's jurisdiction. When a member leaves such employment through resignation, discharge, or retirement, he or she ceases to be a member of the local union. Kelley was therefore excluded from membership in the Union because his retirement rendered him unqualified for membership, not because he was disabled. Kelley has not offered any evidence that the Union treated him differently from any other retiree, or that the reason given for exclusion is false or otherwise a pretext for discrimination. Accordingly, Kelley's disability discrimination claims fail on their merits and the Court dismisses them.

**B.     Claims against the Non-Union Defendants**

Kelley alleges claims under ERISA against the Non-Union Defendants. Specifically, he alleges that the Non-Union Defendants improperly calculated his disability benefits, improperly

8

refused to distribute to him the amount accrued in a vested Retirement Spending Account, and failed to provide him Plan documents upon request.

### 1. *Calculation of disability benefits*

For Kelley to prevail on his claim that the Non-Union Defendants improperly calculated his disability benefits, the parties agree that a prerequisite is that he demonstrate that the Union breached the duty of fair representation it owed him in its handling of his benefits calculation grievance. *See Waldron v. Boeing Co.*, 388 F.3d 591, 594 (8th Cir. 2004). Because Kelley cannot succeed on his duty of fair representation claim for the reasons set forth above, his claim for improper calculation of disability benefits against the Non-Union Defendants is dismissed. *See id.*; *Scott v. United Auto.*, 242 F.3d 837, 840 (8th Cir. 2001).

### 2. *Entitlement to a retirement spending account*

Next, Kelley argues that the Non-Union Defendants "wrongfully dissolved [his] vested Retirement Spending Account (RSA)." He maintains that he is entitled to collect both disability retirement benefits and his RSA benefits at the same time. On December 23, 2003, this precise issue was decided in an arbitration brought by the Union on behalf of another of its members. In that arbitration, an arbitrator determined that under the Plan, bargaining unit members who take disability retirement due to medical disability after January 1, 2000, are not entitled simultaneously to receive RSA benefits. Kelley does not allege or present any evidence that the Union's conduct with respect to this issue was arbitrary, discriminatory, or in bad faith, either in connection with the 2003 arbitration or in connection with his complaint. As with his benefits calculation claim, Kelley's RSA claim fails because he cannot show that the Union breached its duty of fair representation. *See Waldron*, 388 F.3d at 594.

In any event, Kelley's RSA claim has no substantive merit. Kelley has not come forward with any evidence that the Non-Union Defendants have "dissolved" his RSA. On the contrary, in accordance with the plain language of the Plan documents, the Non-Union Defendants have consistently maintained that Kelley's RSA is vested and he may elect to collect from it. However, as the Plan itself states, beneficiaries receiving a disability pension may not simultaneously receive the RSA benefits. Section 4.7.1(d) provides:

> If a Participant who is entitled to a Disability Pension is also entitled to an Early Retirement or Vested Pension, the Participant may elect in writing submitted to the Employer prior to the Participant's Normal Retirement Age to receive the Early Retirement or Vested Pension in lieu of a Disability Pension. Any such election shall be made at the time and in the manner determined by the Committee, and shall be irrevocable when it is received by the Employer. If a Participant does not make the aforesaid election and Disability Pension benefits continue after the Participant's Normal Retirement Date, the Participant shall not be eligible to receive any other form of pension benefit from this Plan.

In sum, Kelley may elect to receive RSA benefits or disability pension benefits, but not both at the same time. He has elected to take disability pension benefits. The Non-Union Defendants recognize that Kelley is free to change his mind until he is sixty-five, but unless he does so, he cannot collect RSA benefits. For the foregoing reasons, Kelley's allegation that the Non-Union Defendants have improperly dissolved his RSA is without merit and must be dismissed.

### 3. *Receipt of plan documents*

Finally, Kelley alleges that the Non-Union Defendants failed to provide him with plan documents. Kelley, however, has not pointed to any documents he should have but did not receive, nor has he provided any evidence that he submitted a proper request for any such documents. In fact, he does not oppose Defendants' motion for summary judgment with respect

to this claim. Accordingly, the Court grants the Non-Union Defendants' motion for summary judgment as to this claim.

### III. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. The Non-Union Defendants' motion for summary judgment [Docket No. 29] is GRANTED.

2. The Union's motion for summary judgment [Docket No. 35] is GRANTED.

3. Kelley's motion for partial summary judgment is DENIED.

4. This case is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: May 25, 2006

s/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge